## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| COLLEEN BENEDICT and JOSEPH BENEDICT, | | |
| Plaintiffs, | No. CV-04-119-LRR | |
| vs. | **ORDER** | |
| ZIMMER, INC., | | |
| Defendant. | | |

_____

### TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.  PRIOR PROCEEDINGS & SUMMARY OF ARGUMENT . . . . . . . . . . . . **2**

III.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

IV.  THE MERITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**

    A.  Did the Benedicts violate the Scheduling Order? . . . . . . . . . . . . . **18**

    B.  Was the Benedicts' Motion for Leave to Provide Expert Report properly granted? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

        1.  Substantial justification . . . . . . . . . . . . . . . . . . . . . . . . . **22**

        2.  Harmlessness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **27**

        3.  Sanction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **29**

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **32**

## I.  INTRODUCTION

Before the court is Defendant Zimmer, Inc.'s Rule 72 Objection (docket no. 76) to the magistrate judge's Order (docket no. 70) granting Plaintiffs Colleen and Joseph Benedict's Motion for Leave of Court to Provide Expert Report Upon Completion of Discovery (docket no. 54).

## II.  PRIOR PROCEEDINGS & SUMMARY OF ARGUMENT[1]

On August 6, 2004, Colleen and Joseph Benedict filed a Petition at Law against Zimmer in the Iowa District Court In and For Linn County.[2]  The Benedicts allege Zimmer designed and manufactured an unreasonably defective hip system ("the device"), which was implanted in Colleen Benedict's body in 2000.  Colleen Benedict claims the device prematurely failed and injured her.  The Benedicts seek damages for the injury that Colleen Benedict allegedly suffered, as well as loss of consortium for her husband, Joseph, and their two children.

On September 7, 2004, Zimmer filed a notice of removal and invoked the court's diversity jurisdiction.  The Benedicts are citizens of Iowa; Zimmer is a Delaware corporation with its principal place of business in Indiana.  The amount in controversy is greater than $75,000, exclusive of interest and costs.

---

[1] Several of Zimmer's motions are pending in this case.  Although the instant Order only disposes of Zimmer's Rule 72 Objection, the court believes a detailed description of the prior proceedings, including the relevant arguments associated with two other pending motions, will assist its analysis.  The two other pending motions are Zimmer's Motion for Summary Judgment and Zimmer's Motion for Leave to File a Supplement to its Motion for Summary Judgment and Rule 72 Objection.

[2] The petition named "Zimmer Holdings, Inc." as the defendant.  On December 28, 2004, the Benedicts were granted leave to amend their complaint to reflect the proper defendant.  An amended complaint was filed on the same date.

On November 12, 2004, the parties sent the court a jointly proposed Scheduling Order and Discovery Plan ("Scheduling Order"). The parties agreed on several deadlines: the Benedicts would disclose their expert witnesses by February 22, 2005; Zimmer would disclose its expert witnesses by April 8, 2005; and the Benedicts would disclose any rebuttal expert witnesses by May 9, 2005. The parties also agreed upon a July 1, 2005 deadline for the completion of discovery and an August 1, 2005 deadline for the filing of dispositive motions. On November 16, 2004, the magistrate approved and adopted the parties' Scheduling Order.

On December 9, 2004, the undersigned entered a trial management order. Among other things, the trial management order scheduled a jury trial to commence during the two-week period beginning on January 17, 2006.

On February 15, 2005, the Benedicts mailed Zimmer a Designation of Expert Witnesses ("Designation"). The Designation identified the names and occupations of two potential expert witnesses: Carl Loper, Jr., a metallurgical engineer, and Kent Jayne, a vocational economist. The Designation indicated Loper would testify as to "liability and causation." The Benedicts' Designation did not include any expert reports.

On April 7, 2005, Zimmer filed an Unopposed Motion for Enlargement of Time to File Expert Report ("Motion for Enlargement"). Zimmer informed the court that the parties had agreed to engage in mediation, which was tentatively scheduled for June 13, 2005. Zimmer noted that, if the case were resolved through mediation, its expert report would not need to be submitted. Zimmer asked that its deadline be pushed back until "thirty days after the [p]arties have engaged in mediation." The Benedicts did not resist the motion. On April 8, 2005, the magistrate granted Zimmer's Motion for Enlargement but instructed the parties that "the current dispositive motion deadline [will] not be extended."

On June 9, 2005, Zimmer filed a Report on Mediation. Zimmer informed the court that the mediation was cancelled and therefore "no deadline currently exists for Zimmer's expert disclosures." Zimmer asked the court to "order that Zimmer must disclose its experts and serve expert reports within thirty days of the Court's order on this motion." On June 10, 2005, Zimmer filed a Motion for Setting of Expert Disclosure Deadline as a Result of Cancellation of Mediation ("Motion for Expert Disclosure Deadline"). On June 15, 2005, the magistrate granted Zimmer's Motion for Expert Disclosure Deadline and ordered Zimmer to disclose its experts and expert reports by July 15, 2005. The magistrate also ordered the Benedicts' expert discovery to be completed by August 15, 2005.

On July 11, 2005 and July 13, 2005, Zimmer submitted its expert reports. On July 11, 2005, Zimmer provided the Benedicts with the reports of Donald Cox, a metallurgical and mechanical engineer. On July 13, 2005, Zimmer disclosed the report of Charles Clark, a professor of orthopaedic surgery and biomedical engineering.

On August 1, 2005, Zimmer filed a Motion for Summary Judgment. In its Motion for Summary Judgment, Zimmer argues that the Benedicts failed to produce any evidence of defect or causation. Zimmer contends that this is a complex products liability case that requires expert testimony. Zimmer points out that, although the Benedicts previously identified two experts, they never supplied any expert reports as required by Federal Rule of Civil Procedure 26(a)(2)(B) and Local Rule 26.1(b).

Three weeks later, on August 22, 2005, the Benedicts filed a Motion for Leave of Court to Provide Expert Report Upon Completion of Discovery ("Motion for Leave to Provide Expert Report"). In their Motion for Leave to Provide Expert Report, the Benedicts claimed they had, in fact, complied with the court's February 22, 2005 expert witness disclosure deadline because they disclosed the names and occupations of their

experts on February 15, 2005; the Benedicts maintained the Scheduling Order "did not mention a specific deadline for expert reports."

Alternatively, the Benedicts argued that, even if the February 22, 2005 expert witness deadline required the disclosure of expert reports, they were justified in not disclosing the expert reports because no depositions had taken place. In addition, the Benedicts alleged:

> At no time prior to the filing of its motion for summary judgment did Defendants [sic] notify Plaintiffs that Defendant was concerned that an export [sic] report had not been provided. In fact, given that depositions only recently commenced, Plaintiffs had no reason to believe that Defendant had any related concerns.
> . . .
>
> Plaintiffs consented to Defendants [sic] disclosing its experts beyond the deadline because Plaintiffs understood it would be unfair to require the report prior to Defendants deposing Plaintiffs, conducting tests on the suspect device, and performing and [sic] IME on Mrs. Benedict. Plaintiffs merely expect reciprocal treatment and want to know the discoverable facts and depose related witnesses before producing their expert report.

The Benedicts indicated that they were now able to provide Loper's "preliminary report" because a limited number of witnesses had been deposed since February.[3] The Benedicts attached an affidavit of Loper, in which he stated that the device was defective and a reasonably safer alternative design was available.[4]

---

[3] In their Motion for Leave to Provide Expert Report, the Benedicts did not mention Kent Jayne, the other expert that they identified in their Designation.

[4] Loper's affidavit, in pertinent part, states:

(continued...)

The Benedicts sought the court's permission "to provide a supplemental expert

[4] (...continued)

3.      I am a metallurgical engineer. I have my Phd [sic] in metallurgical engineering and have served as Professor of Materials Science and Engineering for the University of Wisconsin-Madison where I have taught studies related to materials and metallurgical engineering since 1961.

4.      I have been retained by Plaintiffs to opine regarding liability and causation in the above-captioned matter.

5.      Based upon my background, education, training, experience and review of this case I have come to several opinions, all to a reasonable degree of engineering certainty. Upon completion of discovery I will be prepared to provide additional opinions.

6.      The device implanted in Colleen Benedict prematurely failed.

7.      The device was in a defective condition when it left Zimmer, Inc.'s control.

8.      The device was defective because of a design defect.

9.      A reasonable alternative safer design could have been practically adopted at the time.

10.      The alternative design could have reduced or avoided the foreseeable risk of harm posed by the device. The omission of the alternative design renders the device not reasonably safe.

11.      The alternative design would have reduced or prevented the plaintiff's harm.

report upon completion of discovery and no later than 90 days prior to trial." The Benedicts stated that "[t]he open exchange of discovery in this case has been hampered by delays and disputes and justifies allowing [them] the right to file a supplemental report." The Benedicts argued:

> This court can allow evidence that is not in compliance with Rule 26(a) if the violation was justified or harmless. *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 728 (7th Cir. 1999). A district court does not need to make explicit findings concerning the existence of a substantial justification or the harmlessness of a Rule 26(a) violation. *Woodworker's Supply, Inc. v. Principal Mut[.] Life Ins.*, 170 F.3d [985, 993] (10th Cir. 1999). However, the court should consider the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial, and (4) the moving party's bad faith or willfulness." [*Id.*].

The Benedicts claimed they were entitled to file a supplemental report because Zimmer had allegedly failed to produce: (1) the name and location of its sales representatives who were present in the operating room during Colleen Benedict's implantation procedure; (2) Rule 30(b)(6) witnesses who could testify as to "failures and breakages" of the device; (3) the names of employees and representatives that may have information relevant to this case; and (4) the drawings or other documents that relate to changes made to the device.

On August 23, 2005, the Benedicts filed a Resistance to Defendant's Motion for Summary Judgment and Alternative Request for Continuance to Permit Further Discovery. The Benedicts contend that Zimmer is actually seeking discovery sanctions because the Motion for Summary Judgment rests entirely on the fact that they have not provided an expert report; the Benedicts contend Zimmer thereby seeks to circumvent the spirit and rules of discovery. The Benedicts essentially assert that the court should not enter

summary judgment for lack of evidence of defect or causation and should instead allow

them additional time to complete discovery and serve their expert report. Alternatively,

the Benedicts request a continuance to permit further discovery, "including the production

of Plaintiffs' expert report and the deposition of Plaintiffs' experts," pursuant to Federal

Rule of Civil Procedure 56(f).

The Benedicts advance the same reasons for the delay of discovery in their

Resistance to Zimmer's Motion for Summary Judgment that they articulated in the brief

supporting their Motion for Leave to Provide Expert Report. In addition, they state:

> If the Court intended the disclosure of expert witness deadline
> to also apply to expert reports, the Plaintiffs contend that these
> discovery matters constitute a sufficient showing of good cause
> for the Court to grant Plaintiffs leave to serve the expert report
> as soon as practicable and no later than 90 days prior to trial
> [. . .]. Rule 16(b), Rule 26(a)(2)(C), Federal Rules of Civil
> Procedure. Additionally, the district court has discretion
> whether to accept or reject untimely filed material when ruling
> on a motion for summary judgment. *African Am[.] Voting
> Rights Legal Defense Fund, Inc., v. Villa*, 54 F.3d 1345, 1350
> ([8th Cir.] 1995) (citing *Lujan v. Nat['l] Wildlife Fed'n*, 497
> U.S. 871, 894-98 (1990)).

> Furthermore, leave of the Court is justified on the ground that
> the Defendant has not and will not suffer any harm or
> prejudice if the Court allows the Plaintiffs to serve the expert
> report under these terms. *Jacobsen v. Deseret Book Co.*, 287
> F.3d 936, 952-953 (10th Cir. 2002); *NutraSweet Co. v. X-L
> Eng['g] Co.*, 227 F.3d 776, 785-786 (7th Cir. 2000). Even
> though the Defendant is not required to propound a specific
> discovery request seeking Plaintiffs' expert reports, the fact
> that the Defendant has never inquired about the report prior to
> filing its Motion for Summary Judgment highlights that the
> absence of the report has not prevented the Defendant from
> defending this action, securing its own expert opinions
> regarding the issues of defect and causation, nor has it

hindered Defendant's ability to conduct additional discovery. Furthermore, Defendant will be allowed to take the deposition of Plaintiff's expert after the report is produced and prior to trial.

The fact that the Defendant has already secured its own expert reports regarding defect and causation demonstrates that the Defendant did not need an earlier disclosure of Mr. Loper's expert report. Additionally, Plaintiffs' designation of expert witnesses included Carl Loper's name and further indicated that he is a metallurgical engineer who would testify regarding liability and causation. Therefore, Plaintiff's designation of expert witnesses put the Defendant on notice of Carl Loper's expected role and testimony.

The Benedicts "acknowledge that [Zimmer is] entitled to an expert report and [state that they] will provide one well before 90 days prior to the trial ready date."

On August 25, 2005, the Benedicts filed a Motion to Compel Discovery pursuant to Rule 37 of the Federal Rules of Civil Procedure. In their Motion to Compel Discovery, the Benedicts sought: (1) drawings and documents related to the device that were produced before and after Mrs. Benedict's implantation procedure; (2) the names of individuals with knowledge or information concerning the factual basis for liability; (3) complete answers to discovery requests that they served in June of 2005; and (4) Rule 30(b)(6) witnesses.

On August 26, 2005, Zimmer filed a Response to the Benedicts' Motion for Leave to Provide Expert Report. Zimmer argued that (1) the Federal Rules of Civil Procedure, the Local Rules, the Scheduling Order and the law of the Eighth Circuit Court of Appeals do not permit the Benedicts to submit additional Rule 26(a)(2)(B) disclosures and (2) the Benedicts' alleged discovery disputes are without merit, have been waived and do not mitigate their obligation to disclose experts by the deadline. With respect to the former argument, Zimmer fully discussed Federal Rules of Civil Procedure 26(a)(2) and 37(c)(1), Local Rules 26.1 and 16.1 of the Local Rules, and the Scheduling Order. In addition,

Zimmer relied on multiple cases from the Eighth Circuit Court of Appeals, including *Firefighters' Institute for Racial Equality v. City of St. Louis*, 220 F.3d 898 (8th Cir. 2000); *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004 (8th Cir. 1998); *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277 (8th Cir. 1995); *Harris v. Steelweld Equipment Co.*, 869 F.2d 396, 399 (8th Cir. 1989); and *Blue v. Rose*, 786 F.2d 349 (8th Cir. 1986),[5] to support its argument that the Benedicts should not be allowed to submit their expert reports as a means of avoiding summary judgment. With regard to the latter argument, Zimmer contested the Benedicts' contentions regarding the discovery that occurred in this case.

On September 6, 2005, the Benedicts filed a Reply to Defendant's Response to the Benedicts' Motion for Leave to Provide Expert Report. In their Reply to Defendant's Response to the Benedicts' Motion for Leave to Provide Expert Report, the Benedicts reasserted that any violation of Rule 26(a) was justified or harmless.

On September 7, 2005, Zimmer filed a Motion to File Overlength Brief. In its Motion to File Overlength Brief, Zimmer sought to file an overlength Reply in support of its Motion for Summary Judgment. In its Reply, Zimmer contends (1) the Benedicts' failure to submit expert reports precludes them from presenting expert opinions in opposition to summary judgment; (2) the Benedicts' affidavits do not create a genuine issue of fact under Rule 56(e) of the Federal Rules of Civil Procedure; (3) the Benedicts' proffered expert evidence does not create a genuine issue of fact under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 573 (1993); and (4) the Benedicts' alternative request for a continuance fails to meet the requirements of Federal Rule of Civil Procedure 56(f).

---

[5] Zimmer also relied on cases from the First, Fifth, Seventh, Ninth and Tenth Circuits.

On September 22, 2005, the magistrate entered an Order. The Order dealt with nine pending motions, including the Benedicts' Motion for Leave to Provide Expert Report.[6] In relevant part, the Order stated:

> But for the unnecessary and counterproductive acrimony in this lawsuit, the court finds that discovery and expert disclosure efforts would not have been delayed. Had the parties chosen to focus their efforts on the merits of this lawsuit, rather than waging battle after battle over (largely) non-matters and technicalities, discovery and expert disclosures would not have gotten off track. The parties are strongly encouraged to curb such behavior immediately and redirect their energies toward preparing this case for trial.
> . . .
> Plaintiff's [Motion for Leave to Provide Expert Report] is granted. By November 1, 2005, plaintiffs shall produce a

---

[6] In addition to the Benedicts' Motion for Leave to Provide Expert Report, the Order also granted a number of other motions, including but not limited to: (1) the Benedicts' June 9, 2005 Motion for Protective Order or Alternatively for Withdrawal or Amendment of Admissions; (2) the Benedicts' August 25, 2005 Motion to Compel Discovery pursuant to Rule 37 of the Federal Rules of Civil Procedure; (3) Zimmer's August 26, 2005 Motion to File Overlength Brief; (4) Zimmer's September 2, 2005 Motion for Extension of Time to File a Reply in Support of its Motion for Summary Judgment; and (5) Zimmer's September 7, 2005 Motion to File Overlength Brief. With respect to the last two motions, the court notes that the Order includes a mistake. After granting Zimmer's Motion for Extension of Time to File a Reply in Support of its Motion for Summary Judgment, the Order stated that Zimmer failed to file its Reply by September 9, 2005. In fact, Zimmer submitted its Reply on September 7, 2005 and the Order permitted Zimmer to file such Reply when it granted Zimmer's Motion to File Overlength Brief. In addition, the Order denied Zimmer's September 8, 2005 Motion for Leave to File a Surreply with Respect to the Benedict's September 6, 2005 Reply.

complete expert disclosure pursuant to <u>Fed. R. Civ. P.</u>
26(a)(2).[7]

On October 6, 2005, Zimmer filed the instant Rule 72 Objection to the Order. Zimmer asks the court to conduct a *de novo* review of the portion of the Order that granted the Benedicts' Motion for Leave to Provide Expert Report pursuant to Federal Rule of Civil Procedure 72. Zimmer maintains that the Benedicts' failure to provide their expert reports in a timely fashion was not substantially justified. Zimmer points out that (1) none of the information the Benedicts claim they were denied was requested or required to be produced prior to the February 22, 2005, expert disclosure deadline and (2) the Benedicts were required to file a motion to compel and seek an extension of the disclosure deadline if they believed Zimmer had wrongfully withheld information. Zimmer also maintains that the Order unfairly prejudices its defense of the case in a number of respects. Zimmer points out that the Order effectively moots Zimmer's Motion for Summary Judgment and does not permit the Benedicts' experts to be disposed or new dispositive motions to be filed.

On October 11, 2005, the Benedicts filed a Resistance to the Objection. In its Resistance to the Objection, the Benedicts argue that the Order can only be overturned by showing that it is clearly erroneous or contrary to law. In support of their Resistance to the Objection, the Benedicts essentially reassert the same arguments that they used to support their Motion for Leave to Provide Expert Report. The thrust of their arguments is that neither Rule 26(a)(2)(B) nor the Scheduling Order explicitly required the Benedicts

---

[7] Because the Benedicts did not mention Jayne in their Motion for Leave to Provide Expert Report, the Order cannot, under any interpretation, be construed to permit the Benedicts to file Jayne's report in an untimely fashion.

to disclose the names and occupations of their experts. Alternatively, the Benedicts claim Zimmer's bad faith in discovery matters justifies their failure to provide an expert report.

On October 28, 2005, the Benedicts served Zimmer with the expert reports of Loper and Jayne. On the same date, the Benedicts filed both expert reports as Plaintiffs' Supplements to Resistance to Defendant's Motion for Summary Judgment.

On November 4, 2005, Zimmer filed a Motion for Leave to Supplement its Rule 72 Objection and Motion for Summary Judgment. With respect to its Rule 72 Objection, Zimmer claims the reports of Jayne and Loper demonstrate that the Benedicts lack substantial justification for failing to provide expert reports before the court's February 22, 2005 deadline. For example, Zimmer notes that Jayne's report was not based on any information produced by Zimmer to the Benedicts. Zimmer also reasserts its argument that it will be unfairly prejudiced if the Benedicts' expert witnesses are allowed to testifiy. While preparing for trial—little more than two months away—Zimmer must now locate rebuttal witnesses to explain the reports, take depositions of the Benedicts' experts, and prepare its own rebuttal experts. Concerning its Motion for Summary Judgment, Zimmer argues that, even if the rationale contemplated in the Order justifies or excuses the Benedicts' untimely submission of their expert reports, the court should not consider the Benedicts' experts reports because they do not meet the requirements of Rule 26(a)(2)(B), Rule 56(e) and *Daubert*. For example, Zimmer points out that the expert reports are not properly authenticated or verified by affidavits.

On November 10, 2005, the Benedicts filed a Resistance to Defendant's Motion for Leave to Supplement. The Benedicts claim that Zimmer is attempting "to take a second bite at the summary judgment apple." The Benedicts state:

> The pending motion is an attempt to submit an entirely new and untimely motion for summary judgment. This motion is untimely because the Court set the dispositive motion deadline

13

of August 1, 2005 with the consent of the parties in the Scheduling Order. Defendants [sic] were [sic] well aware of this deadline and the fact that it would not be extended as the Court stated such in unequivocally [sic] terms in its order dated April 8, 2005.

Trial is scheduled to begin in approximately two months on January 17, 2006. Defendant's original motion for summary judgment was filed over two months ago. Defendants [sic] own choice to delay discovery should not now warrant a deadline extension which would be unjust and prejudicial to Plaintiffs.

The Benedicts did not address Zimmer's claims that its expert reports do not meet the requirements of Rule 26(a)(2)(B), Rule 56(e) and *Daubert*.

On November 14, 2004, Zimmer filed a Reply in support of its Motion for Leave to Supplement. Zimmer argues:

[The Benedicts'] Resistance proves the very point that Zimmer brought to the Court's attention in Zimmer's Rule 72 Objection. By serving expert reports after Zimmer filed its Motion for Summary Judgment, Plaintiffs seek to deprive Zimmer of the opportunity to fully challenge the sufficiency of Plaintiff's [sic] expert evidence before trial and perhaps even eliminate the need for a trial. This is something Zimmer is entitled to do as contemplated by the Court's Scheduling Order, and Plaintiffs should not be allowed to gain a tactical advantage by failing to disclose information and waiting until Zimmer has filed its dispositive motion before serving expert reports.

[The Benedicts'] suggestion that Zimmer should not be allowed to address their experts' reports creates an inherently inequitable set of circumstances. Surely, Plaintiffs do not suggest that they are entitled to serve expert reports in support of their Resistance to Zimmer's Motion [f]or Summary

Judgment just two months before trial, yet Zimmer should be precluded from addressing the claims made in those same expert reports. Zimmer would be unfairly prejudiced if Plaintiffs were allowed to submit supplemental evidence to which Zimmer has no opportunity to respond.

The court held a telephonic hearing on the Rule 72 Objection on November 30, 2005. Attorneys Thomas Hanson and Thomas Stayton represented Zimmer. Attorney Pressley W. Henningsen represented the Benedicts.[8]

Trial remains set for the two-week period beginning January 17, 2006.

### III. STANDARD OF REVIEW

The parties disagree about the standard of review. Federal Rule of Civil Procedure 72 contains two different standards for reviewing an order of a federal magistrate judge. Rule 72(a) governs "pretrial matter[s] not dispositive of a claim or defense of a party." Fed. R. Civ. P. 72(a). Rule 72(a) directs the court to consider objections to a magistrate's ruling on a nondispositive matter and "modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." *Id.* On the other hand, Rule 72(b) governs "pretrial matter[s] dispositive of a claim or defense of a party." Fed. R. Civ. P. 72(b). Rule 72(b) requires a *de novo* review. *Id.*

Zimmer maintains Rule 72(b) applies because the Motion for Leave to Provide Expert Report is a "dispositive matter." It argues the court should review the record *de novo* because, if the Motion for Leave to Provide Expert Report were denied, the Benedicts would have no expert evidence, and thus the court would be obliged to grant Zimmer's Motion for Summary Judgment.

---

[8] Prior to May 31, 2005, David L. Baker represented the Benedicts. On May 31, 2005, Pressley W. Henningsen filed an appearance on behalf of the Benedicts.

The Benedicts argue that Rule 72(a) applies, and, therefore, the court should apply a clearly erroneous or contrary to law standard of review. The Benedicts point out that the Motion for Summary Judgment is not before the court. If considered in isolation, the Motion for Leave to Provide Expert Report does not dispose of the case.

The parties have not pointed to any Eighth Circuit Court of Appeals precedent on this issue, and the court can find none. Other courts have reached conflicting decisions. *Compare Yang v. Brown Univ.*, 149 F.R.D. 440, 442-43 (D. R.I. 1993) (concluding magistrate's grant of exclusion of expert witness as a discovery sanction was a dispositive matter because it "vitiates plaintiff's case" and "is tantamount to an involuntary dismissal"), *with Jesselson v. Outlet Assocs. of Williamsburg, Ltd. P'ship*, 784 F. Supp. 1223, 1228 (E.D. Va. 1991) ("It is true that . . . the exclusion of certain evidence can substantially effect a party's ability to present its case. The 'dispositive' nature . . . is simply a function of the case itself.").

The court concludes the Motion for Leave to Provide Expert Report is a "nondispositive matter," and, therefore, Rule 72(a) applies. Although not squarely presented with the question of what standard of review applied, the Eighth Circuit Court of Appeals has approved of a district court reviewing a magistrate judge's discovery ruling for clear error under Rule 72(a)—even though that ruling obviously affected the district court's order on a pending summary judgment motion. *See, e.g., Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 764 (8th Cir. 1995). Moreover, other courts have recognized that discovery matters such as the instant Motion for Leave to Provide Expert Report are generally nondispositive matters. *See, e.g., Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997) ("Discovery is a nondispositive matter."); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) ("Matters concerning discovery generally are considered 'nondispositive' of the litigation."); *see also Phinney v. Wentworth Douglas*

*Hosp.*, 199 F.3d 1, 6 (1st Cir. 1999) (concluding that discovery motions "ordinarily should be classified as nondispositive"); *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 92 (3d Cir. 1992) ("It is undisputed that the proper standard of review for discovery orders is the 'clearly erroneous or contrary to law' standard."). Zimmer's Motion for Summary Judgment was not ruled on in the Order and is not presently before the court. In addition, the Order did not impose a dispositive sanction. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519-20 (10th Cir. 1995) ("Even though a movant requests a sanction that would be dispositive, if the magistrate judge does not impose a dispositive sanction the order falls under Rule 72(a) rather than Rule 72(b)."); *see also Phinney*, 199 F.3d at 6 (concluding motion for discovery sanctions was nondispositive because it does not matter what the magistrate "might theoretically have done").

The court's decision to review the magistrate order for clear error is also consistent with 28 U.S.C. § 636(b)(1)(A), Rule 72's enabling statute. *See Phinney*, 199 F.3d at 5 ("[T]he terms dispositive and nondispositive as used in Rule 72 must be construed in harmony with the classifications limned in section 636(b)(1)"); *see also* 12 Charles A. Wright et al., *Federal Practice & Procedure*, § 3068.2 (1997) ("The dispositive-nondispositive characterization is called for only in Rule 72, but must be examined in light of the enabling statute [(28 U.S.C. § 636(b)(1)(A))] and its history."). The enabling statute excepts a number of dispositive motions from clearly erroneous or contrary to law standard of review, but a Motion for Leave to Provide Expert Report is not one of the listed dispositive motions. 28 U.S.C. § 636(b)(1)(A).[9] This "enumeration informs the

---

[9] The listed exceptions are: a motion for injunctive relief, a motion for judgment on the pleadings, a motion for summary judgment, a motion to dismiss or quash an indictment or information made by the defendant, a motion to suppress evidence in a criminal case, a motion to dismiss or permit maintenance of a class action, a motion for

(continued...)

classification of other motions as dispositive or nondispositive," although the court recognizes that "[t]his does not mean . . . that dispositive motions are those excepted motions specifically enumerated in section 636(b)(1)(A), and no others." *Phinney*, 199 F.3d at 5-6; *see also Callier v. Gray*, 167 F.3d 977, 981 (6th Cir. 1999) (recognizing that the list in section 636(b)(1)(A) is not exhaustive of all dispositive motions).[10]

"'A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Gateway, Inc. v. Companion Prods., Inc.*, 384 F.3d 503, 507-08 (8th Cir. 2004) (quoting *Prufrock Ltd. v. Lasater*, 781 F.2d 129, 133 (8th Cir. 1996)).

## IV.  THE MERITS

### A.  Did the Benedicts violate the Scheduling Order?

Although there is no explicit finding in the Order that the Benedicts violated the Scheduling Order when they failed to disclose their expert reports before February 22, 2005, the Order characterized the Benedicts' expert disclosure requirement under the Scheduling Order as "delayed" and "off-track."  The Order further implies a finding of a violation of the Scheduling Order because the Order granted the Benedicts the opportunity to "produce a *complete* expert disclosure pursuant to Fed. R. Civ. P. 26(a)(2)" by November 1, 2005.  (Emphasis added.)  Because the Benedicts have maintained throughout these proceedings that they did not violate the Scheduling Order, the court must

---

[9] (…continued)
failure to state a claim upon which relief may be granted and a motion for involuntary dismissal.  28 U.S.C. § 636(b)(1)(A).

[10] Even under a *de novo* review, the court reaches the same result.

first decide whether the apparent finding of such a violation is "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a).

Federal Rule of Civil Procedure 26(a) "requires disclosure of each individual likely to have discoverable information, providing a copy of all relevant documents in the party's possession or control, and identifying any person who may be used to present expert testimony." *Crump v. Versa Prods., Inc.*, 400 F.3d 1104, 1110 (8th Cir. 2005) (citing Fed. R. Civ. P. 26(a)). Rule 26(a)(2)(B) imposes specific disclosure obligations upon parties who intend to present expert testimony:

> Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B). The disclosures "shall be made at the times and in the sequence directed by the court." Fed. R. Civ. P. 26(a)(2)(C). In this case, the Scheduling Order required the Benedicts to disclose their expert witness by February 22, 2005. When the Benedicts failed to provide an expert report on that date, they violated Rule 26. Fed. R. Civ. P. 26(a)(2)(B). The Designation clearly falls far short of the level of disclosure Rule 26 requires; the Designation disclosed little more than the experts' names and

occupations. *Id.* In addition, the Benedicts failed to comply with Local Rule 26. *See* LR 26.1(b) ("Unless otherwise stipulated by the parties or ordered by the court, the parties must, on or before the deadlines for disclosing expert witnesses established by the . . . scheduling order and discovery plan, disclose their expert witnesses in accordance with the requirements of Federal Rule of Civil Procedure 26(a)(2)(A) and (B).").

It is unavailing that the Scheduling Order only mentions disclosure of the Benedicts' "expert witnesses." The Benedicts were required to disclose an expert report. Rule 26 clearly states that an expert report is required as part of the expert witness disclosure "[e]xcept as otherwise stipulated or directed by the court . . . ." Fed. R. Civ. P. 26(a)(2)(B). Because there are no orders or stipulations to the contrary in this case, the expert witness disclosure deadline in the Scheduling Order necessarily included a requirement to submit an expert report. *Id.* The Eighth Circuit Court of Appeals has repeatedly held that the failure to disclose an expert report is a failure to disclose under Rule 26. *See, e.g., Firefighters' Instit. for Racial Equality v. City of St. Louis*, 220 F.3d 898, 902 (8th Cir. 2000) ("There is no question . . . that the expert's report was untimely. . . . FIRE named an expert on that date, but did not provide a report."); *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1009 (8th Cir. 1998) ("Rule 26(a)(2) provides that an expert's report must accompany the disclosure."); *see also Boardman v. Nat'l Med. Enters.*, 106 F.3d 840, 843 (8th Cir. 1997) (holding district court did not abuse discretion in refusing to allow plaintiff's expert witness to testify at trial after plaintiff failed to timely disclose the facts and opinions to which the identified expert would testify); *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995) (commenting that an affidavit "lacked the specificity required by the Scheduling Order and thus failed to give

[the defendant] advance notice of [the expert's] qualifications and the substance of his testimony so that [the defendant] could prepare to meet the testimony at trial").[11]

For the foregoing reasons, the court concludes the magistrate's implicit finding that the Benedicts violated the Scheduling Order when they failed to disclose their expert reports before February 22, 2005, is not clearly erroneous or contrary to law. The court is not "'left with the definite and firm conviction that a mistake has been committed.'" *See Gateway*, 384 F.3d at 507-08 (quoting *Prufrock,* 781 F.2d at 133).

### B. Was the Benedicts' Motion for Leave to Provide Expert Report properly granted?

The court must next decide whether the portion of the Order granting the Benedicts' Motion for Leave to Provide Expert Report is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). In pertinent part, Federal Rule of Civil Procedure 37 provides:

> A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.

Fed. R. Civ. P. 37(c)(1); *see also* LR 16.1(i) (providing that evidence may be excluded as a sanction for a failure to disclose in a timely manner); *Firefighters' Institute,* 220 F.3d at 902 ("Unless the failure to meet a deadline was either harmless or substantially justified,

---

[11] The court also notes that on three occasions—in the Motion for Enlargement, the Report on Mediation and Motion for an Order Setting Defendant's Expert Disclosure Deadline, and the Motion for Expert Disclosure Deadline—Zimmer urged the court to reset Zimmer's own expert witness deadline by filing motions that referred to the need to disclose expert reports.

the court may sanction a party by excluding its evidence." (citing *Trost*, 162 F.3d at 1008)).

The Order cites "unnecessary and counterproductive acrimony in this lawsuit" as the reason why the Benedicts' failed to disclose their expert reports before the February 22, 2005 deadline. Thus, the court shall first examine under the clear error or contrary to law standard whether the Benedicts' failure to disclose was substantially justified. Fed. R. Civ. P. 37(c)(1).

### 1. Substantial justification

The Benedicts assert that any violation of the rules is substantially justified "given the Defendant's bad faith in discovery matters." In particular, the Benedicts allege Zimmer hindered its ability to discover admissible evidence that "was crucial to the development of Plaintiff's [sic] expert report." For example, the Benedicts claim (1) Zimmer obstructed its attempts to learn the name and location of the Zimmer sales representatives who were in the operating room when the device was implanted in Colleen Benedict; (2) Zimmer repeatedly objected during depositions without adequate justification; and (3) when Zimmer did produce witnesses, it produced unhelpful ones who did not have knowledge of pertinent facts. The Benedicts opine that "an expert report is based upon expertise as the same relates to the respective facts in a given case" and therefore conclude that "[s]ince no detailed facts had been developed in the case at hand, no expert report could issue." The Benedicts also point out that Zimmer never told them that they needed expert reports before Zimmer filed its Motion for Summary Judgment.[12]

---

[12] As previously mentioned, the Order addressed a number of motions. Although the Order cites "mutual acrimony" and not Zimmer's unilateral bad faith as grounds for granting the Motion for Leave to File Expert Report, the court gives the Benedicts the benefit of the doubt and assumes that the magistrate found the Benedicts' allegations of bad

(continued...)

As a threshold matter, the court notes that the Benedicts have failed to present any legal authority which suggests that Zimmer's actions, if true, constitute "substantial justification" for failing to submit an expert report. *But see* LR 7.1(d) (requiring parties to cite to authority to support arguments). Nor can the court find any Supreme Court or Eighth Circuit Court of Appeals precedent supporting Zimmer's claims.

One Eighth Circuit Court of Appeals products liability case, however, is instructive. *Trost* leads the court to conclude that, under the circumstances of this case, the Benedicts' delay in serving its expert reports was not substantially justified. As in the case at bar, the plaintiff in *Trost* failed to produce an expert report on time, or even before the dispositive motion deadline. *Trost*, 162 F.3d at 1006. Weeks after the defendant filed its motion for summary judgment based upon the failure to disclose, the plaintiff submitted an affidavit of an expert.[13] *Id.* The plaintiff claimed his delay was justified because "additional testing was required to respond to [the defendant's expert] report which had only been submitted about one week before the deadline." *Id.* The district court struck the affidavit as untimely and not substantially justified and ultimately entered summary judgment. *Id.* The Eighth Circuit Court of Appeals held:

> Trost had the burden of proof as the plaintiff. He had to produce sufficient competent evidence to make out a prima

---

[12] (…continued)
faith credible.

[13] The affidavit attached to the resistance to the summary judgment motion in *Trost* was far more detailed than the affidavit attached to the Benedicts' Resistance. The Eighth Circuit Court of Appeals did not decide whether the affidavit in *Trost* complied with Rule 26. *Trost*, 162 F.3d at 1009 ("We . . . affirm the exclusion of [the expert's] opinion on the basis of untimeliness and need not discuss whether his opinion conformed to other Rule 26 requirements . . . .")

facie case regardless of what evidence [the defendant] might assemble. Since failure to disclose in a timely manner is equivalent to failure to disclose, Trost needed to produce competent evidence within deadlines set by the court or risk sanctions under Rules 16 and 37. It is risky for a plaintiff in a products liability case to sit back and wait to see what a defense expert might say before seeking an expert report. If Trost had a legitimate need to await [the defendant's expert's] report before producing the evidence necessary to meet his burden of proof, then his proper course of action would have been to seek an extension of the deadline. His failure to comply with the deadline was not substantially justified . . . .

*Id.* at 1008 (citation omitted).

The court likewise concludes the Benedicts' failure to comply with the Scheduling Order, Federal Rule of Civil Procedure 26 and Local Rule 26.1 was not substantially justified. Although the court can imagine circumstances under which a discovery dispute might constitute substantial justification for not filing a timely expert report, this is not such a case. The Benedicts have not explained how Zimmer's actions, if true, prevented it from filing an expert report. It is often the case that an expert report deadline precedes the discovery deadline; moreover, some of the information required in the expert report, such as the expert's list of publications, should have been known to the Benedicts independent of discovery. In any event, if the Benedicts had a legitimate need to extend the deadline for submitting their expert report, they should have filed a motion and sought an extension of the deadline. The Benedicts were not justified in unilaterally ignoring the Scheduling Order, Rule 26 and Local Rule 26.1, in effect dictating their own expert witness deadline to the court.

The court is particularly troubled by the after-the-fact character of the Benedicts' discovery complaints, as well as the length of the delay. Although the Benedicts' expert reports were due on February 22, 2005, many, if not all, of the discovery problems about

which the Benedicts complain did not occur until after that date. For example, the Benedicts claim that Zimmer failed to produce a Rule 30(b)(6) witness who could testify to "prothesis breakage and failures," thereby justifying the Benedicts' failure to provide an expert report. The record, however, shows that the Benedicts did not serve Zimmer with a notice of a deposition of such a Rule 30(b)(6) witness until June 22, 2005—exactly four months after the Benedicts' expert report was due. Moreover, the Benedicts did not raise any discovery problems to the court (such as filing a motion to compel) until after the fact. Only in the August 22, 2005 Motion for Leave to Provide Expert Report—three weeks after Zimmer raised the issue of the failed disclosure of the expert reports and a full six months after the expert report deadline—did the Benedicts raise such concerns.[14] *See Firefighters' Institute for Racial Equality*, 220 F.3d at 902-03 (holding district court did not abuse its discretion in striking plaintiff's expert where plaintiff did not raise issue of other party's insufficient compliance with discovery until four months after the allegedly insufficient disclosure and two months after the expert report deadline).

The Benedicts also claim that Zimmer's attorneys contacted them before the expert witness deadline and proposed that the parties place discovery on hold. The Benedicts claim that it is "not unusual in this District for the parties to agree to hold off on

---

[14] On August 25, 2005, the Benedicts filed a Motion to Compel Discovery. In the Motion to Compel Discovery, the Benedicts alleged that Zimmer had failed to provide the following: "disclosures . . . relating to all design and design modification documents concerning the [device]"; "disclosures . . . relating to individuals likely to have discoverable information"; "the identity of individuals relating to all design and design modification" of the device; "complete answers to . . . discovery requests that were served on [Zimmer] in June of 2005"; and "witnesses who can address . . . all breakage and failure issues including design and manufacturing processes . . . , details of device failures and breakages, and details concerning the actual device implanted in Colleen Benedict and its failure." The magistrate granted the Motion to Compel in his September 22, 2005 Order. Zimmer did not file an Objection to the Motion to Compel.

depositions and related discovery while the parties explore settlement." The Benedicts point out that they consented to Zimmer receiving an extension for precisely this reason, and now only expect "reciprocal treatment."

The court concludes the Benedicts' argument lacks merit. Zimmer disputes whether there was such an agreement between the parties and there is no written agreement in the record. The Benedicts have not presented any correspondence or affidavits detailing the existence or the terms of such an agreement. Further, the Benedicts have not presented the court with any legal authority which holds that such an agreement could constitute substantial justification for a delay. *But see* LR 7.1(d) (requiring parties to cite to authority to support arguments). Even if the court were to infer an agreement based upon the pleadings in this case and assume such an agreement could constitute substantial justification for a delay in serving an expert report, there was no substantial justification for the length of the Benedicts' delay in disclosing their expert report. It is clear that any agreement had ended before June 9, 2005. On June 9 and 10, 2005, Zimmer filed a Report on Mediation and a Motion for an Order Setting Defendant's Expert Disclosure Deadline. Zimmer informed the court that the mediation was cancelled and therefore "no deadline currently exists for Zimmer's expert disclosures." Zimmer asked the court to "order that Zimmer must disclose its experts and serve expert reports within thirty days of the Court's order on this motion." While Zimmer was actively pursuing a deadline, the Benedicts did nothing. If the Benedicts wanted more time, they should have promptly asked the court for an extension. Instead, the Benedicts waited more than two months before requesting an extension.

In sum, the court finds the Benedicts' failure to comply with the expert witness disclosure deadline was not substantially justified. Any implied ruling in the magistrate's Order finding substantial justification is clearly erroneous and contrary to law. Reviewing

the pertinent pleadings and the Order, the court is "'left with the definite and firm conviction that a mistake has been committed.'" *See Gateway,* 384 F.3d at 507-08 (quoting *Prufrock*, 781 F.2d at 133).

## *2. Harmlessness*

The Benedicts claim that, even if their failure to disclose an expert report was not substantially justified, it was harmless. Although the Order does not discuss Rule 37 or harmlessness, for the sake of argument the court will assume that the Order implicitly found the Benedicts' failure to disclose was harmless.

In support of their argument that their failure to disclose was harmless, the Benedicts claim that Zimmer is "aware of several similar breakages and [is] involved in other claims" and "it is clear they know exactly what expert issues are related to these breakages and failures." Furthermore, the Benedicts assure the court that "[a]s soon as possible, [the Benedicts] will promptly provide a detailed report and allow [Zimmer] to take the deposition of [the Benedicts'] experts."

The court concludes the Benedicts' failure to provide their expert reports is not harmless, and any implied finding in the Order is clearly erroneous and contrary to law. The Benedicts have not presented any evidence that Zimmer is aware of similar breakages or is involved in other claims. Even if true, the court concludes the mere fact a defendant is engaged in similar litigation does not entitle a plaintiff to unilaterally suspend Rule 26 with respect to such defendant. Rule 26, the Local Rules, and the Scheduling Order do not contain such an exception. Consequently, this argument lacks merit.

In any event, the court finds the Benedicts' failure to disclose their expert reports is not harmless for additional reasons. Because of the great length of the Benedicts' delay, the dispositive motions deadline passed before Zimmer received the Benedicts' expert report. Zimmer thus premised its Motion for Summary Judgment on the Benedicts' failure

to disclose. The court finds this reliance clearly prejudiced Zimmer. *See Trost*, 162 F.3d at 1008 ("[I]t cannot be said [the failure to disclose] was harmless. [The defendant] had prepared its summary judgment motion at least partially premised on the lack of expert opinion to support Trost's claims.").

As Zimmer points out, the case at bar is similar to one the court recently decided. In *Schuller v. Great-West Life & Annuity Ins. Co.*, No. 04-CV-62-LRR, 2005 WL 2257634 (N.D. Iowa Sept. 15, 2005), the plaintiff was required to disclose his expert report by October 15, 2004, but failed to do so; as in the case at bar, the plaintiff only gave the defendant the identity of his expert in advance of the expert witness disclosure deadline. *Schuller*, 2005 WL 2257634, at *6-7. In *Schuller*, the expert report was disclosed eight months late as an affidavit filed in support of a resistance to a motion for summary judgment. *Id.* The court concluded that the defendant was significantly prejudiced because it had "premised its summary judgment motion at least partially on [the] failure to produce an expert opinion." *Id.* at *8. Here, the Benedicts' expert reports were not submitted until October 28, 2005, little more than two months in advance of trial. Zimmer would have insufficient time to prepare to refute the evidence at trial. *See Trost*, 162 F.3d at 1009-09 (finding prejudice under similar circumstances). The Benedicts' offer to allow Zimmer to depose Loper cannot remedy this harm this close to trial.

In sum, the court finds the Benedicts' failure to comply with the expert witness deadline was not harmless. Any implied ruling in the Order is clearly erroneous and contrary to law. Reviewing the relevant pleadings and the Order, the court is "'left with the definite and firm conviction that a mistake has been committed.'" *See Gateway,* 384 F.3d at 507-08 (quoting *Prufrock Ltd. v. Lasater*, 781 F.2d 129, 133 (8th Cir. 1996)).

### *3. Sanction*

As indicated, Rule 37 provides that when a party's failure to disclose under Rule 26 is not substantially justified or harmless, that party "is not . . . permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37. Rule 37 also states, however, that "[i]n addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions." *Id.*; *see also* LR 16.1 (providing that evidence may be excluded as a sanction for a failure to disclose in a timely manner). Although the Eighth Circuit Court of Appeals has upheld exclusion of expert witness testimony in cases such as *Trost*, the latter quotation from Rule 37 and *Trost* itself make clear that exclusion is not required but rather that the decision regarding the appropriate sanction rests within the sound discretion of the district court. *See Trost*, 162 F.3d at 1009 (commenting that "[w]hile we might well have decided the question of an appropriate sanction differently, we cannot say the district court's choice of sanctions was an abuse of discretion.").

The question of whether to impose a sanction in the case at bar is different than *Trost* and its progeny in one limited but important respect. In *Trost*, the question on appeal was whether the district court had abused its discretion in excluding the plaintiff's expert testimony; here, the question is whether the magistrate judge's decision to not impose a sanction and extend the Benedicts' expert witness deadline to November 1, 2005 was clearly erroneous or contrary to law. The court has already concluded that the only expressly stated reason justifying the course of action in the Order, i.e., the "unnecessary and counterproductive acrimony in this lawsuit," clearly does not justify the Benedicts' failure to disclose their expert reports before the February 22, 2005 deadline. The court has also ruled the failure to disclose was not harmless. Nonetheless, in light of the deferential standard inherent in Rule 72(a), the court will make every effort to uphold the

proposed course of action in the Order—unless the course of action itself is clearly erroneous or contrary to law.

In spite of such deference, the court concludes the course of action contemplated in the Order is clearly erroneous and contrary to law. The court need only examine the impact of the Order upon Zimmer's opportunity to defend itself at the summary judgment stage of the proceedings to arrive at this conclusion. The ruling on the Motion for Enlargement clearly stated that "the current dispositive motion deadline [will] not be extended." By permitting the Benedicts to submit their expert reports after the dispositive motions deadline, the Order effectively negated Zimmer's opportunity to challenge the sufficiency of the Benedicts' expert evidence on summary judgment. This is clearly erroneous and contrary to law; the Scheduling Order, the Local Rules and the Federal Rules of Civil Procedure all contemplate that a party shall have a full and fair opportunity to submit dispositive motions.

As Zimmer points out, the Order creates an inequitable set of circumstances. The Benedicts are permitted to serve their expert reports eight months late and three months after the dispositive motions deadline; Zimmer is precluded from addressing at summary judgment the claims made in those same expert reports. Zimmer would be unfairly prejudiced if the Benedicts are allowed to submit supplemental evidence to which Zimmer has no opportunity to respond at the summary judgment stage of the proceedings. Put simply, the Order wrongly permits the Benedicts to eviscerate Zimmer's opportunity to file a motion for summary judgment, even though the Benedicts were the party that failed to disclose material in a timely fashion.

Given the deferential standard of review that Rule 72(a) mandates, the appropriate remedy might be to simply modify the Order to extend the dispositive motions deadline to permit Zimmer to file a new summary judgment motion, as opposed to excluding the

30

Benedicts' expert witnesses from testifying. Two circumstances of this case, however, foreclose this course of action.

First, the Benedicts steadfastly maintain that Zimmer ought not be permitted "to take a second bite at the summary judgment apple." Indeed, the Benedicts adamantly resist Zimmer's attempt to supplement its Motion for Summary Judgment, that is, Zimmer's attempt to respond to the Benedicts' October 28, 2005 expert witness disclosures.

Second, to move back the summary judgment deadline at this late date would clearly prejudice Zimmer. The Benedicts did not disclose their expert reports until October 28, 2005—less than three months before trial.[15] It is now less than two months before trial. To extend the summary judgment deadline now would clearly prejudice Zimmer. Even assuming an expedited briefing schedule could be arranged so that Zimmer could file a second summary judgment motion, Zimmer would have insufficient time to prepare for both the summary judgment motion and trial. *Trost,* 162 F.3d at 1008-09 (holding that a defendant "would have been significantly prejudiced by the late production of [the plaintiff's expert's] opinion because of lack of time to prepare to refute the evidence at trial" where opinion was disclosed approximately two months before trial). In addition to moving back the summary judgment deadline, the court would also have to extend the discovery deadlines and permit Zimmer the opportunity to present rebuttal expert witnesses. The Scheduling Order contemplates that a defendant have a full opportunity to rebut the plaintiff's expert witnesses. While preparing its motion for summary judgment and preparing for trial, Zimmer would thus have to locate rebuttal witnesses to explain the Benedicts' expert reports, take depositions of the Benedicts' experts, and prepare its own

---

[15] For purposes of the instant motion, the court assumes, without deciding, that the Benedicts' October 28, 2005 expert witness disclosures are properly authenticated, comply with *Daubert*, and are otherwise admissible.

rebuttal experts. The Benedicts' offer to allow Zimmer to depose Loper, standing alone, cannot remedy this harm given the January 2006 trial date.

The only possible remedy, short of exclusion, would be to declare a "do-over" and revert to the beginning stages of litigation: that is, the court would have to continue the trial, enter a new Scheduling Order, and set new expert witness deadlines, new discovery deadlines and new dispositive motion deadlines. As indicated, however, the Benedicts resist any extension of the summary judgment deadline. More importantly, Zimmer would clearly still suffer prejudice because of the Benedicts' original failure to comply with the discovery rules and this court's order. The undersigned also has one of the busier trial dockets in the nation and a continuance would disrupt the undersigned's trial court calendar. *Cf. id.* at 1009 (noting as a justification for exclusion that "the court's trial calendar would have been disrupted if a continuance became necessary"). In addition, the court has reserved the January 2006 trial date for the parties since December 9, 2004; it is now too late to put a different civil case in this spot. The court declines to grant a continuance.

The court is mindful that the law favors a trial on the merits. The court is equally mindful, however, of the importance of the discovery rules and the need for compliance with the court's orders. To permit the Benedicts to flout those rules in this case would unduly prejudice Zimmer. The only appropriate sanction is a heavy one: the exclusion of Loper and Jayne's testimony from consideration at the summary judgment stage and at trial.

## *V. CONCLUSION*

For the foregoing reasons, **IT IS THEREFORE ORDERED**:

(1)     Defendant Zimmer, Inc.'s Rule 72 Objection (docket no. 76) is **SUSTAINED**;

(2)     The portion of the magistrate's Order (docket no. 70) granting Plaintiffs Colleen and Joseph Benedict's Motion for Leave of Court to Provide Expert Report Upon Completion of Discovery (docket no. 54) is **SET ASIDE**; and

(3)     Plaintiffs Colleen and Joseph Benedict's Motion for Leave of Court to Provide Expert Report Upon Completion of Discovery is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this  5th day of December, 2005.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA