# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

COLLEEN BENEDICT and JOSEPH BENEDICT,

    Plaintiffs,

vs.

ZIMMER, INC.,

    Defendant.

No. 04-CV-119-LRR

**ORDER**

_____

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PRIOR PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  UNDISPUTED MATERIAL FACTS . . . . . . . . . . . . . . . . . . . . . . . 4

IV.  STANDARD OF REVIEW FOR SUMMARY JUDGMENT . . . . . . . . . . . . 6

V.   MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    *Products Liability Claims* . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1.    *Necessity of Expert Testimony* . . . . . . . . . . . . . . . . . . 8

        2.    *Non-Expert Evidence* . . . . . . . . . . . . . . . . . . . . . . . . 12

    B.    *Loss of Consortium Claim* . . . . . . . . . . . . . . . . . . . . . . . . 17

VI.  ALTERNATIVE REQUEST FOR CONTINUANCE . . . . . . . . . . . . . . . 17

VII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## I. INTRODUCTION

Before the court is Defendant Zimmer, Inc.'s Motion for Summary Judgment (docket no. 47).

## II. PRIOR PROCEEDINGS

The procedural history of this case is set forth at length in a prior order ("Rule 72 Order") of this court. *See Benedict v. Zimmer, Inc.*, No. 04-CV-119-LRR (docket no. 89) (addressing objection pursuant to Federal Rule of Civil Procedure 72). Only the most salient prior proceedings are repeated here.

On August 6, 2004, Colleen and Joseph Benedict commenced this lawsuit against Zimmer, Inc. ("Zimmer").[1] The Benedicts assert products liability and loss of consortium claims. The Benedicts seek damages for injuries Colleen Benedict allegedly suffered on account of a defective artificial hip ("the device"), as well as loss of consortium damages for her husband, Joseph, and their two children.

On August 1, 2005, Zimmer filed the instant Motion for Summary Judgment. Zimmer maintains the Benedicts' lawsuit should be dismissed because they cannot prove defect or causation. Zimmer alleges that the Benedicts did not disclose their expert reports before the February 22, 2005 expert witness deadline, and, as a consequence, the court should not consider the testimony of their experts, Carl Loper and Kent Jayne. Absent such expert testimony, Zimmer argues that the court should enter summary judgment in its favor. Because the underlying products liability claims fail for lack of expert evidence, Zimmer contends the loss of consortium claim also fails as a matter of law.

---

[1] The petition was originally filed in state court and named "Zimmer Holdings, Inc." as the defendant. On December 28, 2004, following removal, the Benedicts were granted leave to amend their complaint to reflect the proper defendant. The Benedicts filed an amended complaint on the same date.

On August 5, 2005, the Benedicts filed a Motion to Amend Complaint. The Benedicts sought to specifically allege in their complaint that Zimmer failed to warn Colleen Benedict's orthopedic surgeon, Dr. Mark Mehlhoff, about the risks the device posed. Zimmer did not consent to the Motion to Amend Complaint. On August 22, 2005, the court granted the Motion to Amend Complaint.

On August 23, 2005, the Benedicts filed a Resistance to Defendant's Motion for Summary Judgment and Alternative Request for Continuance to Permit Further Discovery ("Resistance"). The Benedicts deny that their expert reports were late. Alternatively, the Benedicts claim Zimmer's bad faith in discovery justifies their failure to serve expert reports in a timely fashion. The Benedicts ask that the court allow them to complete discovery and serve complete expert reports, thereby mooting Zimmer's Motion for Summary Judgment. Additionally, the Benedicts claim that, even if the court were to exclude their experts from the summary judgment proceedings, sufficient evidence remains for this case to proceed to trial. If the court finds otherwise, the Benedicts ask for a continuance pursuant to Federal Rule of Civil Procedure 56(f) to permit additional discovery, including production of expert reports.

On September 7, 2005, Zimmer filed a Reply. Zimmer reiterates its claim that the Benedicts have not provided sufficient evidence of defect and causation to warrant a trial, including on the newly added failure to warn or instruct claim. Zimmer contends the only admissible evidence the Benedicts have presented is conclusory, unreliable, insufficient and fails to comply with *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993).

On October 28, 2005, the Benedicts filed two Supplements to their Resistance. The Benedicts state that they served Zimmer with the expert reports of Loper and Jayne. The Benedicts filed those expert reports with the court as attachments to their Supplements.

On December 5, 2005, the court held that the Benedicts failed to serve their expert

reports in a timely fashion and barred Loper and Jayne from testifying during the summary judgment proceedings or at trial. The court also declined to continue the expert witness deadline, the dispositive motions deadline or trial.

### III.  UNDISPUTED MATERIAL FACTS

Colleen Benedict has a complicated history of rheumatoid arthritis and has had multiple total joint replacements, including those involving her right hip. In 1987, she had her right hip replaced. In 1993, she had her artificial right hip replaced with another artificial hip and bone graft, in what is known as a "revision surgery." Dr. Mehlhoff allografted the medial aspect of Colleen Benedict's right proximal femur.

In 2000, Colleen Benedict had a second revision surgery. Dr. Mehlhoff implanted a new artificial hip and performed another bone graft. Zimmer designed and manufactured this second artificial hip, i.e., the device.

In revision hip surgery, there are a number of implants and philosophies from which the surgeon can choose. The decision is based on factors such as the amount and location of femoral bone loss, the quality of the remaining bone, and the age and activity level of the patient. Considering Colleen Benedict's prior surgical history, activity level, and history of rheumatoid arthritis, Dr. Mehlhoff believed the device was the most suitable option at that time. Dr. Mehlhoff believed the device was designed to withstand the potential stresses that would be placed on it by Colleen Benedict. Dr. Mehlhoff felt that there was adequate proximal support due to the previous allograft.

The device can address a wide variety of situations, including some of the most demanding in femoral revision surgery. The device is designed for distal fixation using a distal stem that is tapered to secure, consistent seating in the femoral canal, and splines that engage bone to provide rotational stability.

The femoral component of the device has four parts. First, the modular stem

("stem") is made of Ti-6A1-4V ("Tivanium") alloy, has splines to resist rotation, and a roughened surface that allows for bone ongrowth for distal or lower fixation and support. The proximal or upper end of the stem has a male Morse-type taper connection that is surface hardened to resist wear. Second, the modular body ("body") is made of Tivanium. It has a female Morse-type tape at the distal end that engages the male taper on the stem to form the mid-stem junction. The body has a roughened surface to allow bone ongrowth for proximal fixation and support. Third, a compression nut ("nut") threads onto a male thread on the stem to secure the stem-body mid-stem junction. Fourth, the proximal end of the body has a male Morse-type taper connection that engages a femoral head ("head").

The device is "indicated" for total hip arthroplasty in patients whose bone stock is of poor quality or inadequate for other reconstruction techniques as indicated by deficiencies of the femoral head, neck, or portions of the proximal femur. The device implanted in Colleen Benedict was designed to function with distal fixation instead of proximal fixation. Proximal fixation was not required as long as there was adequate proximal support. Proximal support can be obtained without proximal ingrowth.

In July 2002, X-rays of Colleen Benedict revealed a radiolucency, i.e., a space between the device and the bone, developing on the proximal lateral side of the device. The device was well fixed distally. On November 4, 2002, X-rays revealed that the femoral stem of the device had fractured.

On November 9, 2002, Colleen Benedict had another revision of her right hip with bone grafting. The device was removed. The operative report notes that the distal portion of the device was solidly ingrown.

The Benedicts admit that the device was not deficient with respect to the type of material used in manufacturing the device; the Benedicts maintain that a greater quantity of material should have been used in the manufacturing process in order to make the device

bigger and thicker. The production by Zimmer of a larger and thicker version of the device implanted in Colleen Benedict was technically and commercially feasible in 2000.

## IV. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it is a fact that "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *See McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005); *Woods*, 409 F.3d at 990.

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see, e.g., Anderson*, 477 U.S. at 248; *Janis v. Biesheuvel*, 428 F.3d 795, 799 (8th Cir. 2005). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## V. MOTION FOR SUMMARY JUDGMENT

As previously indicated, the court ruled in its Rule 72 Order that the Benedicts

failed to serve their expert reports in a timely fashion and barred the Benedicts' expert witnesses from testifying during summary judgment proceedings or at trial. For this reason, the primary issue left for the court to consider in the instant Motion for Summary Judgment is whether there is a genuine issue of material fact warranting trial on the Benedicts' products liability and loss of consortium claims. The court first examines whether there is a genuine issue of material fact as to the Benedicts' products liability claims and then considers whether there is a genuine issue of material fact as to the Benedicts' loss of consortium claim.

### A. *Products Liability Claims*

Although the Benedicts' original Complaint, Amended Complaint, and second Amended Complaint do not contain formal counts, it seems clear from the relevant pleadings and the arguments of the parties that there are two products liability claims in the instant lawsuit: a design defect claim and an inadequate instructions/warnings defect claim. The parties agree on what the Benedicts must prove at trial to establish these two claims.

In *Wright v. Brooke Group Ltd.*, 652 N.W.2d 159 (Iowa 2002), the Iowa Supreme Court adopted the tests set forth in Restatement (Third) of Torts: Products Liability sections 1 and 2 (1998) ("Products Restatement") for products liability claims. Section 1 of the Products Restatement states:

> "One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect."

*Wright*, 652 N.W.2d at 168 (quoting Products Restatement § 1, at 5). Section 2 states:

> "A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in

7

> design, or is defective because of inadequate instructions or warning. A product:
>
> . . .
>
> (b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;
>
> (c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe."

*Id.* (quoting Products Restatement § 2, at 14). Zimmer claims that the Benedicts' products liability claims fail as a matter of law because they do not have any expert testimony on the existence of defect or causation. Thus, the court must examine whether the Benedicts are required to present expert testimony.

### 1. *Necessity of Expert Testimony*

Zimmer claims that, absent any expert testimony, the Benedicts cannot prove defect or causation. Zimmer maintains that this is a complex products liability case involving difficult factual issues beyond the common knowledge and experience of jurors. To support its position, Zimmer cites a number of Iowa cases. The Benedicts do not directly respond to this argument.

The Iowa Supreme Court and Iowa Court of Appeals have repeatedly discussed the necessity of expert testimony in products liability cases. The Iowa Court of Appeals has

held that "[w]hen technical issues are involved (issues beyond common knowledge and experience) in a products liability or a products-related case, expert testimony is required to generate a jury issue." *James v. Swiss Valley Ag Serv.*, 449 N.W.2d 886, 890 (Iowa Ct. App. 1989). The Iowa Supreme Court has remarked:

> "Whether expert testimony is required ultimately depends on whether it is a fact issue upon which the jury needs assistance to reach an intelligent or correct decision. . . . [D]esign defect cases sometimes involve technical, scientific issues which cannot be fully understood by the average juror without some expert assistance. In such cases, expert testimony as to the defective nature of defendant's design will be an indispensable element of plaintiff's case. However, when the issues presented relate to matters which require only common knowledge and experience to understand them, the testimony of experts is not essential."

*Reed v. Chrysler Corp.*, 494 N.W.2d 224, 226-27 (Iowa 1992) (internal alteration omitted) (quoting *Wernimont v. Int'l Harvestor Corp.*, 309 N.W.2d 137, 141 (Iowa Ct. App. 1981)); *Wernimont,* 309 N.W.2d at 141-43 (affirming exclusion of plaintiff's expert witness and grant of summary judgment); *accord Giles v. Miners, Inc.*, 242 F.3d 810, 813 (8th Cir. 2001) ("Although Iowa law does not appear to require expert testimony for recovery in a products liability action, the plaintiff must supply sufficient evidence to satisfy the trial court that the jury, with its common knowledge, could reasonably find an alternative design to be practicable and feasible.") (citing *Wernimont*, 309 N.W.2d at 141).

The decisions of the Iowa courts are consistent with the Products Restatement, which the Supreme Court adopted in *Wright*. Although the Products Restatement does not require expert testimony in every case, the plaintiff must rely on expert testimony in many cases. Products Restatement § 2, cmt. f, at 23-24. Expert testimony as to the existence

of a design defect is not required when the feasibility of a reasonable alternative design is obvious and understandable to laypersons. Products Restatement § 2, cmt. f, at 23.

> For example, when a manufacturer sells a soft stuffed toy with hard plastic buttons that are easily removable and likely to choke and suffocate a small child who foreseeably attempts to swallow them, the plaintiff should be able to reach the trier of fact with a claim that buttons on such a toy should be an integral part of the toy's fabric itself (or otherwise be unremovable by an infant) without hiring an expert to demonstrate the feasibility of an alternative safer design.

Products Restatement § 2, cmt. f, at 23-24; *cf. Anderson v. Raymond Corp.*, 340 F.3d 520, 524-25 (8th Cir. 2003) (finding, under Arkansas law, summary judgment to be appropriate on design defect, manufacturing defect, and failure to warn products liability claims given lack of expert testimony because alleged defect in lift truck was not a matter of common experience) (citing, in part, *Dancy v. Hyster Co.*, 127 F.3d 649, 653 (8th Cir. 1997) ("Lay jurors . . . are not likely to possess 'common understanding' about how products are designed.")).

The court concludes the Benedicts must present some expert evidence to survive summary judgment in this complex medical products liability case. This applies to both the Benedicts' ability to prove a design defect and their ability to prove a failure to warn or instruct defect.

Any decision which pertains to the design of the device involves engineering, metallurgical and medical principles beyond common knowledge and experience. Whether the device had a design defect, whether the foreseeable risks of harm the device posed could have been reduced or avoided by the adoption of a reasonable alternative design and whether the omission of such design rendered the device not reasonably safe are technical, scientific issues that cannot be fully understood by the average juror without some expert

assistance. *Cf. Giles*, 242 F.3d at 813 (affirming, under Iowa law, district court's grant of summary judgment because testimony of expert witness was inadmissible and evidence failed to show freezer had a design defect that caused plaintiff to suffer frostbite after retrieving popsicles); *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1009 (8th Cir. 1998) (affirming, under Minnesota law, district court's grant of summary judgment where plaintiff failed to produce expert evidence to support his claim that the bicycle was defective in design, manufacture, and warnings).

Likewise, to show the device was defective because of inadequate instructions or warnings requires expert testimony. Here, the average juror needs the assistance of expert testimony to reach an intelligent decision about whether the foreseeable risks of harm posed by the device could have been reduced or avoided by the provision of reasonable instructions or warnings and, if so, whether an omission of instructions or warnings rendered the device not reasonably safe. *Cf. Trost*, 162 F.3d at 1009 (affirming grant of summary judgment on failure to warn or instruct claim).

Regardless of what sort of defect the Benedicts allege, the element of causation, which is required in both claims, *see Wright*, 652 N.W.2d at 168 (quoting Products Restatement § 1, at 5), requires the presentation of expert evidence. The court concludes the Benedicts must present some expert testimony to prove the complex medical device caused Colleen Benedict's injuries. *See Wilian Holding Constr. Prods. v. Rice,* No. 04-2085, 2005 WL 1398340, **1 (Iowa Ct. App. June 15, 2005) (unpublished) ("[M]edical causation is essentially within the domain of expert testimony . . . .") (citing *Dunlavey v. Econ. Fire & Cas. Co.*, 526 N.W.2d 845, 853 (Iowa 1995)); *Diemer v. Hansen*, 545 N.W.2d 573, 576 (Iowa Ct. App. 1996) ("[Whether a swine's illness was caused by defendant's misrepresentations] is a technical issue and goes beyond common knowledge and experience. Therefore, expert testimony is necessary to generate a jury issue."); *Doe*

*ex rel. Doe v. Baxter Healthcare Corp.*, 178 F. Supp. 2d 1003, 1017 (S.D. Iowa 2001) (holding, under Iowa law, that "whether a particular blood component was the likely cause of [the plaintiff's] HIV infection" required expert testimony), *aff'd*, 380 F.3d 399 (8th Cir. 2004); *cf. Cox v. Jones*, 470 N.W.2d 23, 25 (Iowa 1991) ("Professional liability cases, especially medical malpractice actions, require expert testimony of a technical nature concerning standards of care and causation."). Causation in this case is a complex medical issue that is beyond common knowledge and experience. It is undisputed that Colleen Benedict has rheumatoid arthritis and a history of medical problems on her right hip. At the very least, such facts complicate the issue of whether any defect in the device caused the injuries.[2]

Accordingly, it is appropriate to grant Zimmer's Motion for Summary Judgment. *Cf. Anderson*, 340 F.3d at 524-25 (affirming grant of summary judgment); *Trost,* 162 F.3d at 1009 (same).

## *2. Non-Expert Evidence*

The Benedicts contend that, even if the testimony of their expert witnesses is inadmissible, there is a genuine issue of material fact as to their products liability claims. As indicated, the court has ruled that the Benedicts are required to present expert testimony because this is a complex products liability case that involves matters beyond the common knowledge and experience of the jury. Nonetheless, the court deems it worthwhile to address the Benedicts' argument.

In their Resistance, the Benedicts allege that the following evidence warrants a trial: (1) one of Zimmer's representatives, Steve Rozow, "stated in his deposition that it would

---

[2] One of Zimmer's expert witnesses, Dr. Charles Clark, claims Colleen Benedict's brittle bones and undue stress caused the device to fracture. Dr. Cox claims the fracture would have occurred regardless of the type of device used. The Benedicts deny this.

12

have been commercially and technically feasible for Zimmer to produce a safer, thicker proximal body . . . at the time of Colleen Benedict's initial implantation procedure"; (2) Rozow admitted that Zimmer took subsequent remedial measures, eventually developing a larger and thicker device; (3) "Dr. Mehlhoff attested to the availability of a reasonable alternative safer design for the device in his affidavit and deposition testimony" and (4) "Dr. Mehlhoff's affidavit and deposition also contain testimony indicating that to the best of his knowledge other comparable prosthetic devices on the market were not failing." The court also notes that the Benedicts have elsewhere pointed out that Dr. Mehlhoff denies receiving the device's standard package insert warning.

The court finds that the evidence relied on by the Benedicts does not generate a genuine issue of fact as to defect and causation. The reasons are adequately set forth in Zimmer's Reply. First, Dr. Mehlhoff's testimony is conclusory as to the existence of a defect or causation.[3] Dr. Mehlhoff's conclusions are not supported by specific facts from

---

[3] Dr. Mehlhoff's affidavit provides:

> 1. I, Mark Mehlhoff, MD, am of legal age and sound mind.
> 2. I swear, under penalty of perjury, the following is true and correct.
> 3. I am an orthopedic surgeon. I have implanted numerous orthopedic medical devices, including several revision hip implants.
> 4. I am familiar with numerous alternative hip devices for revision surgeries.
> 5. I am not a retained expert in this case.
> 6. I implanted the Zimmer hip revision device in Colleen Benedict that is at question in this case.
> 7. At the time I implanted the device in Colleen Benedict, I had never been informed by any Zimmer representative that

(continued...)

the record and do not contain any analysis. "'[C]onclusory affidavits, standing alone, cannot create a genuine issue of material fact, precluding summary judgment.'" *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 882 (8th Cir. 2005) (quoting *Rose-Matson v. NME Hosp., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998)); *Herrero v. St. Louis Univ. Hosp.*, 109 F.3d 481, 485 (8th Cir. 1997) ("'[C]onclusory affidavits, even from expert witnesses, do not provide a basis upon which to deny motions for summary judgment.'") (quoting *Jackson v. Anchor Packing Co.*, 994 F.2d 1295, 1304 (8th Cir. 1993)); *Miller v. Solem*, 728 F.2d 1020, 1024 (8th Cir. 1984) ("[C]onclusive assertions of ultimate fact are entitled to little weight."). Federal Rule of Civil Procedure 56(e) states, in pertinent part, that:

> [O]pposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to

---

³(...continued)
the device was not suitable for a patient such as Colleen Benedict.
8. The device implanted in Colleen Benedict prematurely failed.
9. The failed device needed to be removed and I performed the removal surgery.
10. Colleen Benedict was injured by the failed device and its necessary removal.
11. At no time prior to Colleen Benedict's surgery did any Zimmer representative give me a package insert containing warnings and risks related to the device.
12. Had I known that the Zimmer hip revision device would prematurely fail due to material fatigue I could have used one of several other devices of different design that were available on the market at the time and it is my opinion that these other devices would not have prematurely failed.

14

> testify to the matters stated therein. . . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e); *cf.* Fed. R. Evid. 702 (requring expert testimony regarding "scientific, technical, or other specialized knowledge" to be "based upon sufficient facts or data," to be "the product of reliable principles and methods," and to demonstrate that "the witness has applied the principles and methods reliably to the facts of the case"). Dr. Mehlhoff's testimony does not comply with Rule 56(e).

Second, Dr. Mehlhoff essentially admitted in his deposition that he is not qualified to testify as to the existence of a defect or causation. Dr. Mehlhoff admitted that he is not a metallurgist, has not conducted any testing on the device, and has not read any published reports on fatigue or failure rates of comparable devices. He also admitted that he is not an expert in determining "whether one device that was on the market in 2000 was in fact a stronger device versus [Zimmer's device]." Given his lack of qualifications to render an opinion on these design issues, Dr. Mehlhoff's testimony is not reliable on the issue of design defect or causation. Dr. Mehlhoff's testimony, whether in his affidavit or in his deposition, is insufficient for summary judgment purposes.

Third, contrary to the Benedicts' allegations, Steve Rozow never testified that "a reasonable alternative safer design could have been practically adopted at the time." Rozow testified that the design of a device involves trade-offs between strength, on the one hand, and space constraints and stiffness, on the other. The only reasonable reading of

Rozow's testimony is that a bigger device was feasible. Rozow did not state that such a design would have been safer. In any event, Rozow's testimony, standing alone, does not address the element of causation or the Benedict's allegation of a defect based on a failure to warn or instruct.

Fourth, the Benedicts cannot rely on any change in the design of the device to prove a design defect. Zimmer argues such a change is inadmissible as a subsequent remedial measure. Federal Rule of Evidence 407 states:

> When, after injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . a defect in a product, a defect in a product's design, or a need for a warning or instruction.

Fed. R. Evid. 407. The Eighth Circuit Court of Appeals has held that subsequent design changes are generally inadmissible under this rule. *See J.B. Hunt Transport, Inc. v. Gen. Motors Corp.*, 243 F.3d 441, 445 (8th Cir. 2001). The Benedicts have not pointed to any exception, and, therefore, the court concludes such testimony is inadmissible. *Id.*; *see, e.g., O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990) (recognizing exception when remedial action is mandated by the government or "because the policy goal of encouraging remediation would not necessarily be furthered by exclusion of such evidence").

Lastly, the court finds that Zimmer's failure to warn or instruct Dr. Mehlhoff does not by itself create a genuine issue of material fact on the Benedicts' failure to warn or instruct claim. The Benedicts have not presented the court with any competent evidence to show that (1) the foreseeable risks of harm posed by the device could have been reduced or avoided by the provision of reasonable instructions or warnings, (2) the omission of the

instructions or warnings rendered the device not reasonably safe and (3) such omission caused Colleen Benedicts' injuries. *Wright*, 652 N.W.2d at 168 (quoting Products Restatement § 2(c), at 14). Consequently, the Benedicts' failure to warn or instruct claim fails.

Taken as a whole, the record cannot lead a rational trier of fact to find for the Benedicts, and therefore summary judgment is appropriate. *See Matsushita Elec.*, 475 U.S. at 587. For the foregoing reasons, the court grants Zimmer's Motion for Summary Judgment with respect to the Benedicts' products liability claims. Fed. R. Civ. P. 56.

### B. Loss of Consortium Claim

Zimmer argues that if the court grants its Motion for Summary Judgment with respect to the Benedicts' products liability claims, it must enter summary judgment in its favor on the Benedicts' loss of consortium claim because the latter are wholly derivative of the former. As authority for such argument, Zimmer cites *Neely v. Am. Family Mut. Ins. Co.*, 930 F. Supp. 360, 376 (N.D. Iowa 1996), *aff'd*, 123 F.3d 1127 (8th Cir. 1997). The Benedicts do not dispute such argument. Accordingly, the court grants Zimmer's Motion for Summary Judgment with respect to the Benedicts' loss of consortium claim. Fed. R. Civ. P. 56.

### VI. ALTERNATIVE REQUEST FOR CONTINUANCE

The Benedicts request that "[i]n the event the [c]ourt determines that it would prefer to have additional facts . . . Plaintiffs respectfully request a continuance pursuant to Rule 56(f) to permit additional discovery, including the production of Plaintiffs' expert report and the deposition of Plaintiffs' experts and such other discovery orders as the Court finds just." For the following reasons, the court denies the Benedicts' request.

The court has already discussed the propriety of granting a continuance in its Rule 72 Order. The court declines to grant the Benedicts' alternative request in their Resistance

to continue the summary judgment deadline pursuant to Rule 56(f). Rule 56(f) permits the court to refuse an application for summary judgment or continue the summary judgment deadline when "it appear[s] from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Fed. R. Civ. P. 56(f). The Benedicts have failed to meet their burden under Rule 56(f) to justify a continuance. The Benedicts do not explain in the affidavit accompanying their request why such a continuance is warranted. The court also finds the Benedicts have had more than ample opportunity to conduct discovery, especially considering this case has been pending since September of 2004. *Cf. In re Temporomandibular Joint Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1489-90 (8th Cir. 1997) (discussing Rule 56(f) continuances and cautioning that "summary judgment is proper only after the nonmovant has had adequate time for discovery"). In any event, a continuance of the summary judgment deadline is now impracticable, as explained more fully in the Rule 72 Order.

## VII. CONCLUSION

**IT IS ORDERED** that Defendant Zimmer, Inc.'s Motion for Summary Judgment (docket no. 47) is **GRANTED**.

**DATED** this 16th day of December, 2005.

_____
LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA